In the Matter of the Petition for
Naturalization of Antal Kovacs.

Antal KOVACS, Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 590, Docket 72-1243.

United States Court of Appeals,
Second Circuit.

Argued March 21, 1973.

Decided April 25, 1973.

Edward L. Dubroff, Brooklyn, N. Y.,
for petitioner-appellant.

Joseph P. Marro, Sp. Asst. U. S. Atty.
(Whitney North Seymour, Jr., U. S.
Atty., S. D. N. Y., Stanley H. Wallen-
stein, Sp. Asst. U. S. Atty., of counsel),
for respondent-appellee.

Before SMITH, FEINBERG and
MANSFIELD, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from an order of the
United States District Court for the
Southern District of New York, the late
Edward C. McLean, *Judge,* denying An-
tal Kovacs' petition for naturalization on
the ground that "petitioner has failed to
establish that he is a person of good
moral character." We find no error and
affirm.

The relevant facts are not in dispute.
Kovacs is a Hungarian national, who
was admitted to the United States for
permanent residence in 1959. In 1968,
Kovacs submitted an Application to File
a Petition for Naturalization with the
Immigration and Naturalization Service.
The application disclosed that Kovacs
had been arrested and convicted on three
occasions. The first occurred in 1959,
where appellant pleaded guilty to a
charge of disorderly conduct arising out
of an arrest in a subway men's toilet,
where he was observed engaging in ho-
mosexual activity with another adult
male. The second occurred in 1960,
again in New York, and involved a
charge of loitering. The third arose out
of an arrest in the men's room of a pub-
lic theater in Los Angeles in 1962, again
involving homosexual activities.

Kovacs was questioned at length about
these arrests by the naturalization ex-

aminer. In response to these questions, Kovacs maintained that he was not now a homosexual, had never been one, and had never engaged in homosexual acts other than the manual manipulation that he claimed took place in the two men's room incidents. He specifically denied ever having committed fellatio.

The hearing examiner then introduced into evidence an affidavit taken from Kovacs in 1962 in Los Angeles. In the affidavit, Kovacs admitted that he had engaged in a large number of homosexual acts, including about fifty acts of fellatio per year since 1959. In the affidavit, Kovacs also consented to an examination by a United States Public Health Service psychiatrist. The hearing examiner introduced a Medical Certificate resulting from that examination, diagnosing Kovacs as a "psychopathic personality—homosexual" [1] and also his Selective Service file, classifying him as a "moral reject" and unfit for military service.

Kovacs admitted signing the affidavit, but claimed that he had not known what he signed, and denied the description of his sexual activities contained therein. He admitted that the interview with the Public Health Service psychiatrist took place, but apparently did not explicitly attack the Medical Certificate. He then introduced the testimony of his former wife and two friends. All attested to Kovacs' good moral character, and denied that he was a homosexual.

The hearing examiner recommended naturalization. In so doing, he relied heavily upon Petition of Labady, 326 F. Supp. 924 (S.D.N.Y.1971), which held that the naturalization should not be denied simply because the applicant had engaged in private consensual homosexual acts. The examiner noted that there was no proof that Kovacs had engaged in *any* homosexual acts, public or private, within the statutory five year period of residence immediately preceding his petition, 8 U.S.C. § 1427(a). He went on to note, however, referring to Kovacs' testimony about prior homosexual proclivities, that "petitioner's denials in the face of the evidence are incredible indeed, and the Court could reasonably consider such testimony as less than truthful and deny the petition."

The final hearing was held before Judge McLean on September 13, 1971. Kovacs did not request a trial *de novo*, as was his right. 8 U.S.C. § 1447(b). The government opposed the petition, relying upon the minutes of the hearing before the examiner. Judge McLean, in a written memorandum, denied the petition, finding, *inter alia*, that "petitioner's lack of candor in his testimony before the examiner is in itself incompatible with any reasonable standard of good behavior."

The Immigration and Nationality Act, 8 U.S.C. § 1427(a)(3), requires that an applicant be a person of "good moral character" at the time of his petition and in the five year period immediately preceding.[2] This standard is fleshed out somewhat by 8 U.S.C. § 1101(f)(6), which provides that "one who has given false testimony for the purpose of obtaining any benefits under this chapter," does not possess such character.

██ The general law in this area is quite clear. The burden of proving good moral character is on the petitioner, Berenyi v. District Director, 385 U.S. 630, 637, 87 S.Ct. 666, 17 L.Ed.2d 656

1. The affidavit and Medical Certificate were prepared in connection with deportation proceedings; these were discontinued when the Ninth Circuit held that the term "psychopathic personality" was void for vagueness as applied to homosexuality. Fleuti v. Rosenberg, 302 F.2d 652 (9th Cir. 1962), vacated and remanded on other grounds, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963).

2. 8 U.S.C. § 1427(e) provides that the petitioner's conduct prior to the five year period may be considered in determining whether the petitioner has met his burden of establishing good moral character. Consequently, there can be no question of the propriety of questioning Kovacs about his past history, which included several *public* acts.

(1967), with any doubts to be resolved against him, *id.* at 636–637, 87 S.Ct. 666; United States v. Macintosh, 283 U.S. 605, 626, 51 S.Ct. 570, 75 L.Ed. 1302 (1930). *See also* Tieri v. Immigration and Naturalization Service, 457 F. 2d 391 (2d Cir. 1972). And the false testimony relied upon to establish a lack of good moral character need not be material to the final merits of naturalization, i. e., the government need not show that truthful answers would have barred granting of the petition. *See* Petition of Haniatakis, 376 F.2d 728 (3d Cir. 1967). *Cf. Berenyi, supra,* 385 U.S. at 637–638, 87 S.Ct. 666.

Under the facts of this case, we agree with Judge McLean that Kovacs failed to discharge his burden. It is true that, as the examiner noted, petitioner's testimony had "not been proven false." But the examiner himself found the testimony "unbelievable" and "incredible indeed," and correctly noted that the district court could deny the petition on these grounds. Yet, despite these findings, Kovacs did not subject his credibility to reexamination by Judge McLean through a trial *de novo*, as was his right. Consequently, the record that was before the district court, to say the least, generates large doubts as to Kovacs'· truthfulness at the initial hearing. Since those doubts are to be resolved against the petitioner, the denial must stand. *See Tieri, supra.*

We pause to note what we are not holding. Petitioner is not being denied naturalization for his sexual activities —but rather for his lack of candor under oath. This is not a case like *Labady, supra,* where the applicant testified truthfully about prior homosexual acts, yet still was granted naturalization be-

cause of the private character of his sexual life. Had Kovacs testified truthfully about his past, the petition might well have been granted.[3]

Affirmed.

3. While the order appealed from must be affirmed, we do note with some sympathy Kovacs' contentions that his record since the 1962 arrest is unblemished. The petition here was filed before the *Labady* decison, and Kovacs may well have felt that admitting his past would have proved

disastrous to his cause. Although his actions here cannot be praised, if his apparently exemplary public behavior continues, a greater exhibition of candor at a later date might well lead to a different result in his efforts to become a citizen.