### In re Petition for Naturalization of Paul Edward BRODIE.
### No. 34353.

United States District Court, D. Oregon.

May 15, 1975.

---

William E. Dillon, Portland, Or., for Immigration & Naturalization Service.

Ronald P. Schiffman, Portland, Or., for petitioner.

## OPINION and ORDER

BURNS, District Judge.

Paul Brodie, a citizen of New Zealand and a veteran of the United States Army, wants to become a citizen of this country. He is a homosexual. Is he by that single trait shut out from citizenship? I have concluded that he is not.

■ Brodie filed his Petition for Naturalization under § 329(a) of the Immigration and Nationality Act, 8 U. S.C. § 1440. This section eases the preconditions to naturalization for persons who have served honorably on active duty in the armed forces of the United States. Lawful admission to this country, periods of residency and physical presence, and non-deportability are waived. Not waived, however, is the burden of establishing "good moral character." 8 U.S.C. § 1427.

The military service requirements of § 329(a) have been met. Brodie enlisted in the Army at Salt Lake City, Utah, on September 21, 1970, and received an Honorable Discharge on April 27, 1972.

He re-enlisted on June 29, 1972, and received an Honorable Discharge ("by reason unfitness, homosexual acts") on November 17, 1972.

Good moral character is disputed by the Immigration and Naturalization Service. Arguing that "since under Section 212(a)(4) [8 U.S.C. § 1182(a)(4)] a sexual deviate shall be ineligible to receive a visa and shall be excluded from admission to the United States, it is inconceivable that such a person could be of good moral character for naturalization," the Designated Naturalization Examiner has recommended that Brodie's petition be denied for failure to establish good moral character.

 I agree that as a homosexual Brodie could have been denied admission to this country. By the time the Supreme Court decided Boutilier v. I. N. S., 387 U.S. 118, 87 S.Ct. 1563, 18 L.Ed. 2d 661 (1967), Congress's intention was clear that § 212(a)(4) be available to exclude homosexuals. See H.R.Rep.No. 745, 89th Cong., 1st Sess. 16 (1965); S. Rep.No.748, 89th Cong., 1st Sess. 19 (1965), U.S.Code Cong. & Admin.News 1965, p. 3328. I do not agree, however, that the standards for exclusion are congruent with those for naturalization. Close examination of the intricate interrelationships among definitions and standards within the Act has persuaded me that my task is to make an independent factual determination of good moral character, limited only by the explicit prohibitions of § 101(f), 8 U.S.C. § 1101(f).

Section 212 lists 31 classes of aliens who are to be excluded, among them polygamists, prostitutes, stowaways and anarchists. For a number of reasons, perhaps for thirty-one reasons, Congress has concluded that persons in these classes should be turned back at the border. Some present apparent dangers, some are likely to become costly burdens upon society, and some may compete for jobs with American workers. For example, aliens likely to become public charges, 8 U.S.C. § 1182(a)(15), may be forbidden entry; but a poor person does not by his poverty, by his acceptance of public assistance, relinquish the capacity for good moral character. Thus among those who may be excluded are some who would be eligible for citizenship if lawfully here. This would not be so if excludability necessarily determined good moral character.

In addition to persons with the enumerated conditions, habits, and occupations, "aliens ineligible to citizenship" may be excluded. 8 U.S.C. § 1182(a)(22). If the standards for exclusion were congruent with those for naturalization, Congress would have added nothing by this language. Futility is not favored. The language's presence in this carefully articulated statute suggests that Congress believed it had not in its enumeration of excludables described all those who were ineligible to citizenship. Hence, to the specific classes was added the separate and otherwise determined class of persons ineligible to citizenship.

Conversely, when setting out certain conditions that would bar a finding of good moral character, 8 U.S.C. § 1101(f), Congress made no such blanket addition. Members of only six of the 31 excludable classes may not be found of good moral character. 8 U.S.C. § 1101(f)(3). Having been particular in selection of the six, Congress cannot have intended that the remaining 25 classes (less one, described above) should be read in by judicial expansion. It may be noted also that when Congress re-defined one of the excludable classes to remove any doubt that it involved homosexuals, H.R.Rep.No.745, supra, Congress made no change in § 1101(f) concerning good moral character.

 Thus, as I indicated, I conclude that Brodie's liability to exclusion, and more pertinently to deportation as an alien excludable at the time of entry, 8 U.S.C. § 1251(a)(1), does not require

that I find him ineligible to citizenship.[1] Rather I must determine from all the facts and circumstances whether Brodie has satisfied the burden of establishing his good moral character. In the often-quoted words of Learned Hand, "it is settled that the test is not the personal moral principles of the individual judge or court before whom the applicant may come; the decision is to be based upon what he or it believes to be the ethical standards current at the time." Posusta v. United States, 285 F.2d 533 (2d Cir. 1961).

I have little difficulty finding that Brodie's conduct is acceptable by the ethical standards of the year 1975. Although his partners have been men, his social and sexual behavior has not otherwise differed from that of many other persons 28 years old. Like most people, he is not sexually involved with minors. He does not use threat or fraud. He does not take or give money. Nor does he engage in sexual activity in parks, theaters, or any public places. He has been arrested only once, in New Zealand in 1967 for public drunkenness. In short, he has been neither a public nuisance nor a private danger. In re Labady, 326 F.Supp. 924 (S.D.N.Y.1971). Compare, Kovacs v. United States, 476 F.2d 843 (2d Cir. 1973).

■ I am not required to find that Brodie's behavior conforms to the preferences of the majority. Plainly it does not. I need only find that it does not so ⟨offend that the "ordinary" person, whose response I must improvise, would think it immoral. Schmidt v. United States, 177 F.2d 450 (2d Cir. 1949). That finding I do make. Some indication of contemporary standards comes from 1971 changes in Oregon law, end-ing criminal penalties for sexual behavior between consenting adults. Legislative consideration of these matters was thorough, and may be taken as an expression of community views. See, Fadeley, Sex Crimes in the New Code, 51 Or.L.Rev. 515 (1972). As the American Law Institute wrote, in notes to the Model Penal Code that was Oregon's guide, "no harm to the secular interests of the community is involved." Model Penal Code, Comments to § 207.5, at 277–8 (Tent.Draft No. 4, 1955).

More recently, in December of last year, the Portland City Council adopted a resolution making it a city policy not to discriminate in employment on the basis of sexual orientation. Council Res.No.31510, Dec. 18, 1974. Other states and cities have made similar changes. See also, Or. Student Public Interest Research Group, "Homosexuality, Employment, and Discrimination." (1975). The American Psychiatric Association has removed homosexuality from its list of mental illnesses. N. Y. Times, April 9, 1974, p. 12. Gay rights groups demonstrate annually in many cities and campaign responsibly throughout the year for legislative and attitudinal changes.

■ Noting these indications, I am convinced that the community regards homosexual behavior between consenting adults with tolerance, if not indifference. Brodie is a person of good moral character and his petition should be granted.

The foregoing shall constitute findings of fact and conclusions of law pursuant to F.R.Civ.P. 52(a).

Accordingly, it is

Ordered that the petition for naturalization be granted.

---

1. When deciding In re Labady, 326 F.Supp. 924 (S.D.N.Y.), the court did not need to consider deportability. Because Labady had announced his homosexuality at the border and been admitted anyway, the I.N.S. conceded that his entry without deceit made him non-deportable. Brodie, however, is deportable, though the Service has deferred initiation of deportation during these naturalization proceedings. His status is not itself an impediment to naturalization because he applies under 8 U.S.C. § 1440, which permits his application "notwithstanding the provisions of § 1429 of this title as they relate to deportability."