**In the Matter of the Petition of Benjamin Bayuga ZABALA to be admitted a citizen of the United States of America.**

**Petition No. 897970.**

United States District Court,
E.D. New York.

Oct. 31, 1983.

**666**

Howard R. Baum, General Attorney, Dept. of Justice, I.N.S., Brooklyn, N.Y., for I.N.S.; Alan Page, Kenneth S. Herewitz, I.N.S., Brooklyn, N.Y., of counsel.

Romeo T. Capulong, New York City, for petitioner.

## MEMORANDUM–DECISION and ORDER

BARTELS, District Judge.

The United States, through the Immigration and Naturalization Service, has moved under Section 340(j) of the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1451(j), to reopen an order and judgment naturalizing Benjamin Zabala as a citizen. The summary procedure of Rule 60(b)(3) of the Federal Rules of Civil Procedure is invoked to reopen the judgment upon the ground of fraud, which under the rule must be brought within one year. The alternative to a Section 340(j) summary procedure under these circumstances is a Section 340(a) plenary action to set aside an order of naturalization.

Zabala entered this country from the Philippines. On June 26, 1975, he filed a visa application in Manila for admission into the United States. In the form, he stated that he was never married and had no children. On August 28, 1975, Zabala was admitted into the United States as a permanent resident under Section 203(a)(2) of the Act, 8 U.S.C. § 1153(a)(2), as a second preference alien—the unmarried son of a lawful permanent resident. On June 25, 1981, Zabala was naturalized in the United States District Court for the Eastern District of New York. Finally, on June 7, 1982, just within the one-year period allowed under Rule 60(b)(3), the government moved to reopen Zabala's naturalization based on fraud.

The gravamen of the government's complaint in the motion papers is that Zabala was married in 1974 at the time he applied for a visa, although he concealed this fact. However, later and after the lapse of one year the government, at a hearing before this court on October 20, 1982, raised for the first time a second claim for reopening. In this second claim the government alleged that Zabala exhibited a lack of "good moral character" by making false statements on both his visa application and Form I–130 filed three years later. It is to be noted that this second claim was not raised in the original motion papers or any amendments thereto, although the government filed a memorandum of law supporting the same. If the second claim is barred by the statute of limitations, there will be no need to further consider the same except insofar as it is a claim arising out of subsequent acts of Zabala in connection with his application for citizenship.

### First Claim

The first claim of the government is predicated upon the so-called 1974 marriage of Zabala to Lilia Aquino on August 17, 1974. The government's case is based upon a copy of a marriage contract obtained by the government from the files of the National Census and Statistics Office of the Philippines. The contract states that a marriage license was issued on August 12, 1974 to Zabala and Aquino, that both appeared before Municipal Judge Francisco H. Lopez on August 17 to take each other as husband and wife, that Bonifacia Babatid and Jose R. Tuazon appeared and signed the contract as witnesses to the solemnization, and that Judge Lopez signed the contract as the solemnizing official.

It is Zabala's contention that this marriage contract was void at its inception, in that he was not present at the ceremony before Judge Lopez on August 17, 1974, he did not freely consent to the marriage, and signed the contract in his boarding house when it was brought to him by Aquino's

uncle because he was in fear for his life if he refused to do so. Aquino was pregnant at the time with a son who was born on December 24, 1974. If Zabala's claims are true, then the marriage is void under Article 55 of the Civil Code of the Philippines, which requires that both parties to the marriage freely consent to it in the presence of the solemnizing officer.

Zabala's evidence in support of his story consists of the affidavits of himself, Lilia Aquino, and Bonifacia Babatid, one of the witnesses to the contract. Ms. Babatid's affidavit states that:

> to our great surprise, it was only Lilia Aquino who appeared before the Municipal Judge of Banaybanay, and we did not see and/or notice the presence of Benjamin B. Zabala; [t]hat because I was requested by the parents of Lilia Aquino to act as one of the witnesses to the Marriage Contract and without knowing its legal implication, I affixed my signature on the space reserved for witness, although the same was not yet signed by Benjamin B. Zabala, as he was not actually present during the marriage ceremony. . . .

Judge Lopez and Jose R. Tuazon, the other witness to the contract, are both deceased. Thus, the only three signatories to the marriage contract who are alive today all claim that Zabala was not present at the ceremony.

Against this evidence, the government contends that it is entitled to a presumption of validity of the contract under Article 410 of the Civil Code of the Philippines, which states that:

> The books making up the civil register and all relating thereto shall be considered public documents and shall be prima facie evidence of the facts therein contained.

■ In reply, Zabala has presented evidence that Article 410 refers to the Civil Register or Registrar's Office, which is headed by the Municipal Treasurer, and not to the National Census and Statistics Office. Moreover, Zabala has affidavits from both Rodolfo V. Aguilon, the Municipal Treasurer (Officer-in-Charge) of Banaybanay, Davao Oriental, and Rosita V. Ruta, the Clerk of the Court of the Fourth Municipal Circuit Court of Lupan-Banaybanay, to the effect that there are no records of the marriage in either office. Since the marriage contract states that the marriage took place in Banaybanay, both of the above mentioned offices should have copies of the contract in their files. Given the absence of any official record of the marriage, the government's copy of the contract cannot receive presumptive validity under Article 410.

■ In view of the fact that there is no evidence of any records of the marriage in the proper recording office, and also because there is evidence by the witnesses who signed the marriage contract to the effect that Zabala was not present at the marriage, the court is compelled to conclude that the purported marriage of August 17, 1974 was void at its inception, and that Zabala was accordingly properly admitted into the United States in 1975 as the unmarried son of a lawful permanent resident. The government's motion to reopen, based on the 1974 marriage, is therefore denied.

■ There are two different ways under the Act for the government to attack a judgment of naturalization because it was wrongfully obtained: first, by a summary procedure under Section 340(j) of the Act to reopen the judgment, invoking Rule 60(b)(3), which has a one year bar, and second, a plenary action under Section 340(a) of the Act, 8 U.S.C. § 1451(a), to set aside the judgment, which is not limited to the one year bar. In each case the burden of proof is different and affects substantial rights of the petitioner. In the first case, the applicant must prove his eligibility and good moral character with any doubts to be resolved against him. *Kovacs v. United States*, 476 F.2d 843, 844–45 (2d Cir.1973). In the second case, the government carries the heavy burden of proof by clear, unequivocal and convincing evidence in order to divest a naturalized citizen of his citizen-

ship. *Costello v. United States*, 365 U.S. 265, 269, 81 S.Ct. 534, 536, 5 L.Ed.2d 551 (1961); *In re Campbell's Petition*, 326 F.2d 101 (2d Cir.1964). Thus, it is important to both parties as to which procedure is available or which must be pursued. With this in mind, we will consider the second claim.

### Second Claim

This claim is based on the government's contention that Zabala exhibited a lack of good moral character. The Act, 8 U.S.C. § 1427(a)(3), requires that a person be of "good moral character" at the time of his petition for naturalization and in the five-year period immediately preceding the petition. The Act, 8 U.S.C. § 1101(f)(6), provides that "one who has given false testimony for the purpose of obtaining any benefits under this chapter" is not a person of good moral character.

At the time a petition for naturalization is first heard, the burden of proving good moral character is on the petitioner, with any doubts to be resolved against him. *Berenyi v. District Director*, 385 U.S. 630, 637, 87 S.Ct. 666, 671, 17 L.Ed.2d 656 (1967); *Kovacs v. United States*, 476 F.2d at 844–45. "And the false testimony relied upon to establish a lack of good moral character need not be material to the final merits of naturalization, i.e., the government need not show that truthful answers would have barred granting of the petition." *Kovacs v. United States, Id.* at 845.

Zabala's relationship with Lilia Aquino did not end in 1974. Aquino and the child born on December 24, 1974 were sent away from her home in Banaybanay because of the shame caused to her family by her being an unwed mother. She and her son moved in with Zabala's family in Dagupan City, Philippines, until Zabala was admitted into the United States on August 28, 1975. She gave birth to a second son on April 3, 1976. This child was also fathered by Zabala. On October 1, 1977, Zabala returned to the Philippines and married Aquino. This marriage is not in dispute. Zabala then returned to the United States, hoping to be able to bring his wife and children to the United States.

On March 27, 1978, Zabala filed Form I–130 on behalf of Lilia Aquino Zabala and his children so that they could enter the United States. In this form Zabala stated that he married Lilia on October 1, 1977 (three years after the date claimed by the government) and that he had two "stepchildren." Zabala's wife and two sons were not admitted into the United States due to the uncertainty surrounding the 1974 marriage contract.

As above stated, the government asserts that Zabala lacked "a good moral character" in that he stated in his 1975 visa application that he had no children when at the time he had fathered a six-month old son, and also stated in Form I–130 that the two children were his stepchildren. This claim was not set forth in an amendment, and even if it had been, it would not have related back under Rule 15(c) of the Federal Rules of Civil Procedure to the date of the original motion. Consequently, it is barred by the one year limitation under Rule 60(b)(3).

We conclude, therefore, that in addition to denying the government's motion to reopen on the first claim, we must also deny the government's motion with respect to the second claim. If for any reason the government decides to proceed further to invalidate Zabala's judgment of naturalization, it follows that it must resort to a plenary action under Section 340(a) of the Act.

SO ORDERED.