**Jose Domingo RICO, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 02–CV–1008 (NGLB).**

United States District Court,
E.D. New York.

May 9, 2003.

Jose Domingo Rico, Forest Hills, NY, Pro se.

Scott Dunn, Asst. U.S. Atty., Brooklyn, NY, for Respondent.

### ORDER

GERSHON, District Judge.

Plaintiff Jose Domingo Rico is a sixty-nine year old native of Colombia who entered the United States on February 4, 1965 and is presently a lawful permanent resident. On December 28, 1998, plaintiff filed an application for naturalization with the United States Immigration and Naturalization Service ("INS"). On May 19, 2001, plaintiff's application was denied on the ground that he failed to establish good moral character pursuant to 8 U.S.C. § 1427(e). Plaintiff timely filed an appeal. On December 14, 2001, the INS affirmed the Naturalization Examiner's decision. Plaintiff thereafter filed this application for *de novo* review of the agency's determination pursuant to 8 U.S.C. § 1421(c). A hearing was held before this court on January 29, 2003 in which plaintiff, appearing *pro se*, submitted exhibits and provided testimony on his own behalf. Having considered plaintiff's testimony and exhibits, as well as supplementary papers submitted by both parties, plaintiff's application for citizenship is denied.

### Plaintiff's Testimony

Plaintiff testified in English, demonstrating the required proficiency for naturalization pursuant to 8 U.S.C. § 1423(a)(1). Nevertheless, a Spanish language interpreter was made available to him during the hearing.

Plaintiff testified that he has lived and worked in this country for over thirty years. He has been married and divorced three times since arriving in the United States, although he acknowledged the third marriage only during cross-examination. He has two children from his first marriage who reside in, and are citizens of, his native country, Colombia. Plaintiff has held a variety of jobs since entering the United States. He testified that he began his career in this country as a singer in Chicago. He thereafter moved to New York where he became a real estate broker. In 1965, plaintiff took a position with an attorney as an "immigration specialist." Plaintiff worked in this capacity, preparing paperwork and visa applications, for the next thirty years. Plaintiff subsequently testified, however, that during this period he also owned and operated a number of small businesses. For example, plaintiff testified that, as of 1975, he owned and operated a sewing factory in Queens. He also testified that in 1976 he began a still active mail-order business selling reproductions of state charters.

Plaintiff refers to himself as a "Doctor." In support of this appellation, he presented a certificate in "Philosophy Sociology and the Politics of Economics" from the Institute of Christian Economics (1977); a "Master of Arts" (1979) and "Master of

ArtsMayor in Psychology" (1981) from Trinity Evangelical Seminary of New York; a "Doctor of Psychology" (1980), "Doctor of Metaphysics" (1980), "Doctor of Philosophy" (1981), and "Doctor of Divinity" (1981) from the Collegium Neotarianum Philosophia; and certification in Hypnotherapy from the American Board of Hypnotherapy.

Plaintiff admits that he has a lengthy criminal record. He has been convicted of five driving while intoxicated ("DWI") offenses since 1973. Two resulted in felony convictions and sentences of probation of five years each. Only one of these, however, a 1994 felony conviction for operating a motor vehicle while under the influence of alcohol, occurred during the five year period preceding plaintiff's application for naturalization. Plaintiff was sentenced to a $1000 fine and five years of probation for that offense. He successfully completed his probationary period in June 1999, five months after completing an application for naturalization.

Plaintiff does not contest the severity of his DWI offenses. He testified that he believes that it is wrong to drink and drive and that driving while intoxicated may result in accidents, injuries, and even death. He does not, however, accept responsibility for every DWI offense for which he has been convicted. Specifically, plaintiff claims that he was innocent of a 1976 offense to which he pled guilty. According to his testimony, plaintiff was a passenger in the backseat at the time of the accident that resulted in his arrest, but pled to the offense because it was "easier." Tr. at 37.

Plaintiff admits that he has a history of problems with alcohol. When asked if he still drinks, plaintiff answered "less" before amending his answer to "never." Tr. at 35. Plaintiff's only participation in alcohol rehabilitation consists exclusively of court-ordered treatment. He dates his first steps towards rehabilitation, however,

as commencing in 1995, six months after court-ordered treatment had ceased. Tr. at 28, 37. Plaintiff also testified that he no longer drives. That claim is cast into doubt by the fact that plaintiff maintains a current driver's license. Plaintiff's primary proffer in support of his rehabilitation is his professional involvement in the production of a Spanish language motivational seminar entitled "The Art of Thinking Positively." As part of this business venture, plaintiff gives lectures on reform and self-improvement to persons attempting to cease bad habits like using alcohol and fighting. Plaintiff also sells books and audiotapes on this subject. Plaintiff first obtained copyright protection for his seminar in 1985. His first television show based on the seminar aired on Community Access television in 1996. Plaintiff currently broadcasts his programs on Community Access channels in the five boroughs of New York City. Plaintiff sells his books and audiotapes through these broadcasts.

Plaintiff's criminal record also includes one conviction for attempted rape in the third degree, defined under New York law as sexual intercourse with another person to whom the actor, being 21 years old or more, is not married and who is less than 17 years old. N.Y. Penal Code § 130.25(2). Plaintiff pled guilty to that offense in 1976. Plaintiff now contends, however, that he is innocent of that charge. While plaintiff admits to an eight-month sexual relationship with the victim of the crime, he claims that he is not guilty of the offense to which he pled guilty because the victim was over the statutory age of 17. Tr. at 49. (Plaintiff was 42 at the time). Plaintiff's claim to innocence is belied, however, by his testimony that a poem in the record, entitled "My Blue Princess Sixteen," was dedicated to the victim of the offense. Tr. at 54.

## Standard of Review

Title 8 of the United States Code, Section 1421, vests naturalization authority in the Attorney General of the United States. Section 1421(c) provides that "a person whose application for naturalization under this title is denied ... may seek review of such denial before the United States district court ... Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application."

■ An applicant seeking naturalization must strictly comply with the requirements for citizenship established by Congress, *Fedorenko v. U.S.*, 449 U.S. 490, 506–507, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981), and bears the burden of establishing "eligibility for citizenship in every respect." *INS v. Pangilinan*, 486 U.S. 875, 884, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988). Any doubts as to eligibility are to be resolved in favor of the government. *Berenyi v. District Director*, 385 U.S. 630, 637–39, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967).

■ Section 1427(a)(3) of Title 8 provides that "no person ... shall be naturalized unless such applicant ... during all the periods referred to in this subsection has been and still is a person of good moral character." Determinations of good moral character pursuant to this statutory provision are made on a case by case basis in accordance with the "generally accepted moral conventions current at the time." *Repouille v. U.S.*, 165 F.2d 152, 153 (2d Cir.1947). *See e.g., In re Labady*, 326 F.Supp. 924 (S.D.N.Y.1971) (private consensual homosexual conduct does not preclude a finding of good moral character); *Petition of Suey Chin*, 173 F.Supp. 510 (S.D.N.Y.1959) (prior narcotics possession conviction precludes finding of good moral character on the grounds that addiction

"involves not only the user but others and the community as well").

The statutory period during which good moral character is to be assessed is "five years immediately preceding the date of filing his application ... up to the time of admission to citizenship." 8 U.S.C. § 1427(a)(1) and (2). However, Section 1427(e) further provides that "in determining whether the applicant has sustained the burden of establishing good moral character ... the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period." The implementing regulations provide that conduct prior to the five year statutory period should be considered to the extent it may "appear relevant to a determination of the applicant's present moral conduct." 8 C.F.R. § 316.10(a)(2). *See Tieri v. INS*, 457 F.2d 391, 393 (2d Cir.1972); *Posusta v. U.S.*, 285 F.2d 533, 535 (2d Cir.1961); *Chan v. INS*, 2001 WL 521706, at *7 (E.D.N.Y.2001).

Section 1101(f)(3) of Title 8 precludes a finding of good moral character where an applicant, during the five year statutory period preceding his application for naturalization, has committed a crime of moral turpitude. The INS makes no claim in this case that plaintiff falls within that section. However, INS regulations also preclude a finding of good moral character where an applicant has "committed unlawful acts that adversely reflect upon the applicant's moral character" during the five year statutory period, except where extenuating circumstances exist, even if such acts do not constitute crimes of moral turpitude pursuant to 8 U.S.C. § 1101(f)(3). 8 C.F.R. § 316.10(b)(1) and (3)(iii).

### Plaintiff's Moral Character

■ Plaintiff in this case has committed a single offense, DWI, during the five year statutory period preceding his application for naturalization. That offense, however, is only one in a series of five DWI convictions spanning a ten year period. While none of the other offenses occurred during the five year statutory period, under 8 C.F.R. § 316.10(a)(2), quoted above, plaintiff's prior convictions are "relevant and a proper subject of inquiry to determine whether he has in effect reformed." *In re Tieri,* 457 F.2d at 393. This court finds that he has not.

■ Drunk driving is "an urgent, nationwide problem of staggering proportion," *Dalton v. Ashcroft,* 257 F.3d 200, at 208 (2d Cir.2001), and must be considered as a strong negative factor in assessing plaintiff's moral character. *Le v. Elwood,* 2003 WL 21250632, at *2 (E.D.Pa.2003). Plaintiff in this case has not presented any convincing evidence of his rehabilitation from his previous socially-harmful behavior. Other than his participation in a court-ordered program, plaintiff has not undergone any formal treatment for his admitted and lengthy alcohol problem. His testimony regarding drinking and driving did not establish that he has in fact reformed Plaintiff does not accept responsibility for his past actions, claiming that he is innocent of a DWI offense to which he pled guilty. He further claims that he cannot recall the circumstances which gave rise to his other DWI arrests. Plaintiff's sole proffer in relation to his rehabilitation consists of his role in producing his for-profit seminar on "Positive Thinking." In light of the fact that plaintiff's copyright for his Institute for the Art of Thinking Positively was obtained in September 1985, almost a decade prior to his 1994 offense, this participation is unpersuasive evidence of plaintiff's rehabilitation.

■ Plaintiff has also previously been convicted of attempted rape in the third degree, a crime of moral turpitude which, had it occurred during the five year statutory period, would alone preclude a finding of good moral character. *Castle v. Immigration and Naturalization Service,* 541 F.2d 1064, 1066 (4th Cir.1976); *In re Torres–Varella,* 23 I. & N. Dec. 78, 2001 WL 534297, *15 (BIA 2001). Plaintiff's claim of actual innocence in relation to that offense (to which he pled guilty) and his failure to demonstrate remorse for his actions towards the victim, support this court's finding that plaintiff has not been rehabilitated and does not presently possess the good moral character required for citizenship.

Finally, I note plaintiff's overall lack of candor during this court's January 29, 2003 hearing. *See Kovacs v. United States,* 476 F.2d 843, 845 (2d Cir.1973) (finding of good moral character precluded by "lack of candor under oath"). Plaintiff's testimony at the hearing does not necessarily constitute false testimony within the meaning of 8 U.S.C. § 1101(f)(6) (precluding finding of moral character where an applicant "has given false testimony for the purpose of obtaining [immigration] benefits"). *See Rodriguez–Gutierrez v. Immigration and Naturalization Service,* 59 F.3d 504, 507 (5th Cir.1995) (a finding of lack of credibility does not alone justify the conclusion that false testimony has been given). However, his failure to accept responsibility for and provide candid testimony regarding his past criminal behavior and his lack of candor regarding drinking, driving, and other matters, precludes a finding that plaintiff presently meets the good moral character requirement of citizenship. *See Le,* 2003 WL 21250632, at *3 n. 6.

### Conclusion

Plaintiff's 1994 DWI conviction, failure to accept responsibility for his past crimes,

failure to establish his claim of rehabilitation, and lack of candor, taken together, preclude a finding of good moral character in accord with current moral conventions. Plaintiff's application for naturalization is therefore denied.

**SO ORDERED.**