**In the Matter of the Grand Jury Subpoena served on John DOE.**

**No. 450, Docket 76–1406.**

United States Court of Appeals, Second Circuit.

Argued Nov. 1, 1976.

Decided Dec. 9, 1976.

Gerald Walpin, New York City (Rosenman Colin Freund Lewis & Cohen, Robert W. Gottlieb and Lawrence C. Winger, New York City, on the brief), for appellant.

Thomas E. Engel, Asst. U. S. Atty. (Robert B. Fiske, Jr., U. S. Atty., New York City, S.D.N.Y., Rhea Kemble Neugarten and Jerry L. Siegel, Asst. U. S. Attys., New York City, on the brief), for appellee.

Before FEINBERG, MANSFIELD and MESKILL, Circuit Judges.

FEINBERG, Circuit Judge:

Two individuals and a corporation, whose identities appear in sealed papers but are here called only John Doe, Richard Roe and X Corporation, appeal from an order of the United States District Court for the Southern District of New York, Charles S. Haight, Jr., *J.*, denying their motion to enjoin the United States Attorney and a grand jury from investigating X Corporation and Roe and from interfering with their counsel's own investigation. Because we conclude that there is no basis for appellate jurisdiction at this time, we dismiss the appeal. '

I

The controversy before us grows out of a grand jury inquiry into possible criminal violations of the Internal Revenue Code by X Corporation, Roe and Philip Poe, a former employee of the Corporation. On July 30, 1976, an assistant United States Attorney informed counsel for X Corporation and Roe that they were targets of a grand jury investigation. A week later, counsel retained John Doe, an investigator-attorney, to assist him in the preparation of a defense for the grand jury targets and also in connection with a civil litigation, apparently between X Corporation and Philip Poe. Counsel told Doe to obtain facts concerning Poe and his finances. The reason for this, we are told, was to demonstrate that any money wrongfully obtained and not reported to the Internal Revenue Service had

been taken by Poe for his own benefit and that when Poe was questioned about this he put the blame on Roe and X Corporation to save himself from prosecution.

Doe began his investigation by making inquiries regarding Poe. There is some dispute about the substance of Doe's conversations about Poe with various people, including his neighbors, his mailman and tenants to whom Poe rents his home. It is clear, however, that Doe asked some questions, that word got to Poe and his wife, and that they called their own lawyer, who relayed the information on August 24, 1976, to the United States Attorney's office. According to the affidavit of the Assistant in charge of the investigation, the Poes' lawyer said that a man named John Doe, who held himself out as a lawyer, had been speaking to the Poes' tenants and neighbors and had inquired about the age and residence of the Poe children and where they went to school. The attorney reported that the Poes were "apprehensive about their own safety and that of their children."

Without inquiring further, the Assistant authorized a subpoena for Doe to testify before the grand jury, and the subpoena was served on Doe the following day. When Doe called the United States Attorney's office to discover the reason for the subpoena, he was told the investigation concerned obstruction of justice and that he was a target. On August 26, counsel for X Corporation and Roe informed the United States Attorney's office that Doe was his retained investigator and asked for an explanation of why an investigator working for an attorney defending targets of the grand jury investigation was himself being brought before a grand jury. Apparently dissatisfied with the answer, counsel brought the motion that is the subject of this appeal. After hearing brief argument, Judge Werker signed an order that stayed the subpoena upon Doe and set the matter down for hearing on September 8. Before

that hearing was held, the Government withdrew the subpoena but stated that it would continue the obstruction of justice inquiry "without the benefit of Mr. Doe's testimony before the grand jury," and would seek his indictment if the facts warranted it.

The September 8 hearing was held before Judge Haight, who had before him affidavits of defense counsel and the Assistant United States Attorney in charge of the grand jury investigation, as well as accompanying documents. X Corporation and Roe argued that the prosecutor, by threatening Doe, was interfering with the efforts of counsel for X Corporation and Roe to prepare their defense as grand jury targets, and that this abusive use of the grand jury justified enjoining the investigation not only of Doe but also of Roe and X Corporation. Judge Haight denied the motion in a 12-page sealed opinion,[1] which noted that the subpoena of Doe had been withdrawn and concluded that the further relief asked for fell "beyond the boundaries of a proper exercise" of the court's power. This expedited appeal followed.

## II

In this court, the Government urges us to dismiss the appeal because the order under attack is not appealable. Appellants argue that we may review the judgment of the district court under 28 U.S.C. §§ 1291 or 1292, or alternatively that we may issue a writ of mandamus under 28 U.S.C. § 1651.

■ Recognizing the strong federal policy against piecemeal appeals, appellants remind us that we have nevertheless allowed appeals under section 1291 under the authority of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), when the district court order is collateral to the main proceeding but has grave consequences to the losing party, and review of the final judgment will not provide adequate relief. Appel-

---

1. The opinion, along with the other papers, has been sealed at the request of appellants' counsel, "[i]n view of the secrecy of all grand jury proceedings and the unnecessary prejudice that

could result to our clients from public disclosure of the existence of the grand jury investigation . . .."

lants rely on our decision in *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 496 F.2d 800 (2d Cir. 1974) (en banc), in which we held appealable an order denying disqualification of an attorney. Appellants claim that this case is analogous because the Government, in effect, has disqualified Doe as appellants' investigator because he is unwilling or unable to proceed effectively with the threat of indictment hanging over him. But the analogy is not persuasive. *Silver Chrysler* dealt with an attorney, not an investigator, and with disqualification, not with possible deterrence.[2] Moreover, there was an existing adversary proceeding—a trial—about to begin, which was civil, not criminal, in nature. The contrast points up the weakness of appellants' arguments on appealability. We are asked to enjoin the investigation of a criminal offense by a grand jury, whose broad investigative powers have often been emphasized by the Supreme Court and by this court. E. g., *Calandra v. United States,* 414 U.S. 338, 343, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *In re Subpoena of Persico,* 522 F.2d 41, 55–56 (2d Cir. 1975). The request is made in the context of a mere investigation and is brought here prematurely. If the grand jury refuses to indict Doe for obstruction of justice and to indict Roe and X Corporation for tax violations, none of them will have to prepare a defense. Even if indictments are obtained, appellants will be able to make the same claims of prosecutorial misconduct and infringement of their constitutional right to prepare an adequate defense by motions in the district court and by an appeal from convictions, if any.[3]

Nor do we think appellants fare better under sections 1292(a)(1) or 1292(b). We have construed the former section not to authorize appeals from denial of a similar attempt to enjoin a grand jury criminal investigation. *In re Grand Jury Investigation of Violations,* 318 F.2d 533, 536 (2d Cir.), cert. dismissed, 375 U.S. 802, 84 S.Ct. 25, 11 L.Ed.2d 37 (1963). Appellants rely on *Dostal v. Stokes,* 430 F.2d 1299 (6th Cir. 1970), and the analogy of habeas corpus proceedings to support their claim that section 1292(a)(1) confers jurisdiction. But *Dostal* appears to have been appeal from denial of an injunction in a civil action brought under 42 U.S.C. § 1983. It is true that habeas corpus proceedings are regarded as civil, e. g., *Fay v. Noia,* 372 U.S. 391, 423–24 & n.34, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), a classification now explainable perhaps as much by history as by logic.[4] But this is not a habeas corpus proceeding because appellants are neither in custody nor under restraint.

Similarly, we do not have jurisdiction under section 1292(b). That section, which deals with appeals from concededly interlocutory orders, requires certification from the trial court as a condition of requesting review from us. No such certification accompanies this appeal. Indeed, there is no indication that appellants even requested one. Under these circumstances, we will not view this as the sort of exceptional situation which appellants, citing 9 Moore's Federal Practice ¶ 110.22[3] (2d ed. 1975), urge deserves liberal application of section 1292(b). This is precisely the sort of case in which we would want the district

---

**2.** We think this distinguishes *In re Investigation Before April 1975 Grand Jury,* 531 F.2d 600, 605 n.8 (D.C. Cir. 1976), also relied on by appellants.

**3.** Appellants also rely on *United States v. Doe,* 455 F.2d 753 (1st Cir.), aff'd in part and vacated in part on other grounds sub nom. *Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972), in which an appeal was allowed from an order denying a motion to quash a grand jury subpoena. That case, like this one, arose from a subpoena of a third party who might not be willing to face a contempt citation rather than comply with the subpoena.

But the subpoena in this case has been withdrawn. Moreover, the subpoena in *United States v. Doe* allegedly threatened to destroy, without remedy, a senator's constitutional privilege under the Speech or Debate clause, whereas here redress will be available later for any prejudice in preparing a defense. See *Gregory v. United States,* 125 U.S.App.D.C. 140, 369 F.2d 185, 187–89 (1966).

**4.** See *Ex Parte Tom Tong,* 108 U.S. 556, 2 S.Ct. 871, 27 L.Ed. 826 (1883); 1 W. Bailey, Habeas and Special Remedies §§ 1, 4 (1913).

court's judgment that there is a controlling question of law on which "an immediate appeal . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). For it seems to us that the issue here is not primarily one of law at all but whether the judge, in his discretion, should put some curb on the grand jury investigation because of alleged prosecutorial misconduct.[5] While it is possible that Judge Haight concluded that he was powerless to enjoin prosecutorial abuse of the grand jury system, we do not read his opinion that way. Rather, we believe he felt it improper to interfere with the grand jury investigation at this stage, in the light of other remedies that may be available to appellants in the future and what he found to be "a colorable basis" for the grand jury investigation regarding Doe.[6] And this, finally, is the reason why we think 28 U.S.C. § 1651 does not afford appellants a basis for review. The question before the district judge was not one of power but of the propriety of its exercise, a circumstance in which mandamus is inappropriate.[7]

■ We thus conclude that the appeal before us must be dismissed. However, we feel that an additional word is called for. We have the impression from reading the record that the proceedings here have escalated far beyond what is necessary to protect the contending interests involved. On the one hand, before issuance of the grand jury subpoena upon Doe (which was later withdrawn), at least some further slight investigation would have been appropriate.

A grand jury is not a prosecutor's plaything and the awesome power of the Government should be used deliberately, not in haste, and without unwarranted or idle threats, direct or implied.[8] On the other hand, if the occasion for appellants' motion was not a molehill, neither was it a mountain once the subpoena was withdrawn. It seems to us that since then too much has been made of the entire incident.

Appeal dismissed.

---

5. Appellants also cite *United States v. MacDonald,* 531 F.2d 196, 199–200 & n.3 (4th Cir.), pet. for cert. filed, 45 U.S.L.W. 3005 (U.S. June 29, 1976). But that case, like *United States v. Lansdown,* 460 F.2d 164, 170–71 (4th Cir. 1972), and *United States v. Alessi,* 536 F.2d 978 (2d Cir. 1976), apparently allowed an appeal under 28 U.S.C. § 1291 under the exception to the final judgment rule of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), because double jeopardy interests were involved. There can be no such claim here as yet.

6. The judge cited, among other cases, *In the Matter of Grand Jury Investigation (General Motors Corp.),* 32 F.R.D. 175 (S.D.N.Y.), appeal

dismissed, 318 F.2d 533 (2d Cir.), cert. dismissed, 375 U.S. 802, 84 S.Ct. 25, 11 L.Ed.2d 37 (1963).

7. In *Donlon Industries, Inc. v. Forte,* 402 F.2d 935 (2d Cir. 1968), we made this clear:

   [W]e do not—indeed may not—issue mandamus with respect to orders resting in the district court's discretion, save in most extraordinary circumstances . . . . See *Will v. United States,* 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967).

8. We refer here also to remarks allegedly made by government counsel to defense counsel regarding the ethical propriety of the latter's conduct.