In re GRAND JURY SUBPOENA DUCES TECUM DATED JANUARY 2, 1985 (Robert M. SIMELS, Esq.).

Donald PAYDEN, Intervenor-Appellant,

v.

UNITED STATES of America, Appellee.

No. 1196, Docket 85–6066.

United States Court of Appeals, Second Circuit.

Submitted Aug. 19, 1985.

Decided Oct. 21, 1985.

Elkan Abramowitz, New York City (Obermaier, Morvillo & Abramowitz, P.C., Ronald C. Minkoff, Robert M. Simels, Bennett Gershman, Madeleine M. Nichols, New York City, of counsel), for intervenor-appellant.

John K. Carroll, Asst. U.S. Atty., S.D.N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Rhea Kemble Brecher, Stuart E. Abrams, Asst. U.S. Attys., New York City, of counsel), for appellee.

Before FEINBERG, Chief Judge, FRIENDLY and NEWMAN, Circuit Judges.

FRIENDLY, Circuit Judge.

This is a minor sequel to our decision in *Payden v. United States*, 767 F.2d 26 (2 Cir.1985), familiarity with which is assumed. As there recounted, Payden was the subject of an indictment charging him with violations of the federal narcotics laws; a superseding indictment added a count charging him with engaging in a continuing criminal narcotics enterprise in violation of 21 U.S.C. § 848 and sought forfeiture of "all profits and proceeds of profits obtained" by him from the operation of the enterprise. The district court issued a trial subpoena to Robert M. Simels, Payden's attorney, requiring him to produce all papers relating to payments by or on behalf of Payden. After events recounted in our opinion, 767 F.2d at 28, Simels received a grand jury subpoena requiring him to produce the same materials, and the trial subpoena was withdrawn. Payden moved in the district court under F.R.Cr.P. 17(b) to quash the grand jury subpoena. The motion was denied, 605 F.Supp. 839 (S.D.N.Y.1985). Payden appealed and we reversed, holding that issuance of the grand jury subpoena after indictment was an abuse of the grand jury process. Payden then submitted a bill of costs of $2,399.88 to which the Government filed timely objection on the basis of sovereign immunity.

## DISCUSSION

The Government's immunity from costs was of long standing. Blackstone recites:

> The king (and any person suing to his use) shall neither pay nor receive costs; for, besides that he is not included under the general words of these statutes, as it is his prerogative not to pay them to a subject, so it is beneath his dignity to receive them.

3 *Blackstone's Commentaries* 400 (Lewis ed. 1898). Professor Moore wittily observes that "[t]he United States seems never to have had any kingly dignity preventing it from recovering costs; although for many years it followed the kingly prerogative against paying costs." 6 *Moore's Federal Practice* ¶ 54.75[1]. In *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131 (1926), the Supreme Court laid down the general rule that "in the absence of a statute directly authoriz-

ing it, courts will not give judgment against the United States for costs or expenses." *Id.* at 20, 47 S.Ct. at 8. In 1948, Congress incorporated this rule as § 2412(a) of title 28. *See* Pub.L. No. 80–773, 62 Stat. 973 ("The United States shall be liable for fees and costs only when such liability is expressly provided for by Act of Congress.").

Congress took action to restrict the Government's immunity from costs in 1966 when it amended 28 U.S.C. § 2412(a) to read, in pertinent part, as follows:

Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action. A judgment for costs when taxed against the Government shall, in an amount established by statute or court rule or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by him in the litigation.

Pub.L. No. 89–507, 80 Stat. 308 (1966). The House Committee on the Judiciary expressed the amendment's purpose as one of "putting the private litigant and the United States on an equal footing as regards the award of court costs to the prevailing party in litigation involving the Government." H.R.Rep. No. 1535, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Ad. News 2527, 2528 [hereinafter cited as *House Report* ].[1] This amended version of 28 U.S.C. § 2412(a) has remained in force with only minor changes, *see* Equal Access to Justice Act, Pub.L. No. 96–481, § 204(a),

94 Stat. 2327 (1980), as amended by Pub.L. No. 99–80, § 2(a), 99 Stat. 184 (1985). Although Payden relies on FRAP 39(b),[2] that rule confers no independent authority to award costs against the Government; in this case, any such award depends on whether Payden's motion to quash the grand jury subpoena was a "civil action" within 28 U.S.C. § 2412(a).

The limitation of the language to civil actions was deliberate. The draft of the 1966 amendment to 28 U.S.C. § 2412(a) submitted to Congress by the Department of Justice provided for an award of costs in "any action" brought by or against the United States. *See House Report* at 2531. The House Committee on the Judiciary amended the draft by inserting the word "civil" before "action," explaining that the addition "merely clarifies the intent of the bill." *Id.* at 2530. It would seem likely that when the committee used the term "civil action," it had in mind Rules 2 and 3 of the Federal Rules of Civil Procedure, which say, respectively, "There shall be one form of action to be known as 'civil action'," and "A civil action is commenced by filing a complaint with the court." On that view, costs could not be awarded against the Government in any proceeding, though indubitably civil, which did not have the characteristics of a "civil action" under Rules 2 and 3. However, in 1968 the Advisory Committee on Appellate Rules, in commenting on FRAP 39(b), read the 1966 amendment more broadly as generally placing the United States "on the same footing as private parties with respect to the award of costs *in civil cases*" (emphasis supplied). We would thus have little doubt that 28 U.S.C. § 2412(a) would permit the award of costs to an intervenor who had successfully moved to quash a subpoena issued by the Government in a civil case brought by or

---

**1.** The committee went on to state that "[a]pparently the present inequality is related to a governmental advantage derived from the principle favoring immunity of the sovereign from suit. Under modern conditions, there is no reason for this advantage when the law provides for suit against the Government." *House Report* at 2528.

**2.** This provides:

*Costs For and Against the United States.* In cases involving the United States or an agency or officer thereof, if an award of costs against the United States is authorized by law, costs shall be awarded in accordance with the provisions of subdivision (a); otherwise, costs shall not be awarded for or against the United States.

against it, even though such a motion itself does not bear all the trappings of a "civil action."

However, this does not lead to the conclusion that costs may be awarded against the Government in favor of a successful movant to quash a grand jury subpoena. It is common ground that 28 U.S.C. § 2412(a) does not authorize the award of costs against the Government in favor of an acquitted defendant. It would seem quite incongruous that such a defendant—indeed, on Payden's logic, even a convicted defendant—could recover costs incurred on a successful motion to quash a trial subpoena or a successful appeal from the denial of such a motion.

If this be so, we see no reason for a different rule where the motion is to quash a grand jury subpoena. The predominant function of a grand jury proceeding—apparently its sole one in this case—is that of "preferring charges in serious criminal cases." *Costello v. United States*, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). Proceedings before a grand jury are essentially criminal in nature, even though its functioning, like the criminal trial itself, may give rise to collateral controversies, such as motions to quash subpoenas, where criminality is not an immediate issue. It has been held that a grand jury proceeding is "a criminal proceeding" within the portion of the Criminal Appeals Act, 18 U.S.C. § 3731, that entitles the Government to appeal from a decision or order of a district court suppressing or excluding evidence. *See Matter of Grand Jury Empanelled February 14, 1978*, 597 F.2d 851, 855–57 (3 Cir.1979) (order quashing grand jury subpoenas issued to the target and to others); *United States v. Calandra*, 455 F.2d 750 (6 Cir.1972) (preindictment order suppressing evidence seized during grand jury investigation).

Payden makes much of the fact that he entered the proceeding as an intervenor, 605 F.Supp. at 845, with the district judge citing *In re Katz*, 623 F.2d 122, 125 (2 Cir.1980), which cited F.R.Civ.P. 24(a)(2) in upholding the right of a target of a grand jury investigation to intervene to quash a subpoena issued to his attorney. However, our reference in *Katz* to Rule 24(a)(2) was made *en passant*, its applicability having been ignored by the Government and mentioned only briefly, without analysis, by the intervenor-appellant. The result would have been the same without the reference in view of "what seems to have always been the underlying principle in the development of intervention: the purpose of the courts to prevent their processes from being used to the prejudice of the rights of interested third persons"—an inherent power of courts in the absence of statute or rule. 3B *Moore's Federal Practice* ¶ 24.03, at 24–19. Indeed, neither of the cases cited in *Katz* in support of the right of a person affected by a grand jury subpoena issued to another to intervene and move to quash it—*Velsicol Chemical Corp. v. Parsons*, 561 F.2d 671 (7 Cir.1977), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978), and *In re Grand Jury Proceedings*, 604 F.2d 798 (3 Cir.1979)—made any reference to Rule 24(a)(2). The essential point is that, as our opinion on the merits shows, the controversy on the present appeal was basically criminal in nature. The broad distinction made in § 2412(a) was between the civil and the criminal worlds; Congress did not intend the statute to be so expanded as to include collateral matters arising from criminal trials or from grand jury investigations preceding them.

In response to this, Payden argues that the words "any civil action" in a later part of 28 U.S.C. § 2412—subsection (d)(1)(A), which provides for the limited award of attorney fees against the United States—have been held to include a habeas corpus petition, where the issues often are, like here, basically criminal, citing in support *Boudin v. Thomas*, 554 F.Supp. 703, 705 (S.D.N.Y.1982). But, though we were not reminded of this by counsel for either side, we reversed this portion of *Boudin* on appeal, *see* 732 F.2d 1107, 1111–15 (2 Cir. 1984), holding that "[t]his Court is not persuaded that Congress meant to include the unique habeas corpus proceeding in the category of 'any civil action' for the pur-

poses of section 2412." *Id.* at 1112. Judge Meskill's opinion noted the district court's reliance on the statement in *Browder v. Director, Illinois Department of Corrections*, 434 U.S. 257, 269, 98 S.Ct. 556, 563, 54 L.Ed.2d 521 (1978), that "[i]t is well settled that habeas corpus is a civil proceeding," but concluded that "the 'civil' label does not mean that habeas proceedings are entirely civil in nature." *Id.* As explained in *Ex parte Tom Tong*, 108 U.S. 556, 559–60, 2 S.Ct. 871, 872, 27 L.Ed. 826 (1883):

> The writ of *habeas corpus* is the remedy which the law gives for the enforcement of the civil right of personal liberty. Resort to it sometimes becomes necessary, because of what is done to enforce laws for the punishment of crimes; but the judicial proceeding under it is not to inquire into the criminal act which is complained of, but into the right to liberty notwithstanding the act. Proceedings to enforce civil rights are civil proceedings, and proceedings for the punishment of crimes are criminal proceedings. In the present case the petitioner is held under criminal process. The prosecution against him is a criminal prosecution, but the writ of *habeas corpus* which he has obtained is not a proceeding in that prosecution. On the contrary, it is a new suit brought by him to enforce a civil right, which he claims, as against those who are holding him in custody, under the criminal process. If he fails to establish his right to his liberty, he may be detained for trial for the offense; but, if he succeeds, he must be discharged from custody. The proceeding is one, instituted by himself for his liberty, not by the government to punish him for his crime.

More recently, in *Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969), after reciting that "habeas corpus proceedings are characterized as 'civil'," *id.* at 293, 89 S.Ct. at 1087 (citing *Fisher v. Baker*, 203 U.S. 174, 181, 27 S.Ct. 135, 136,

51 L.Ed. 142 (1906)), the Supreme Court went on to say that "the label is gross and inexact" and that "[e]ssentially, the proceeding is unique." *Id.*, 394 U.S. at 293–94, 89 S.Ct. at 1087. We ourselves have described the classification of habeas corpus as "civil" as being "now explainable perhaps as much by history as by logic." *Matter of Doe*, 546 F.2d 498, 501 (2 Cir. 1976). Our holding in *Boudin* establishes for this circuit that habeas corpus is not a "civil action" for purposes of 28 U.S.C. § 2412(d)(1)(A), and Payden's argument on the basis of the asserted habeas analogy thus boomerangs.

Payden also relies on two other cases: *In re Grand Jury Proceedings (Manges)*, 745 F.2d 1250 (9 Cir.1984), in which the Ninth Circuit decided that the denial of a target's motion to quash a grand jury subpoena comes within FRAP 4(a)(1), allowing 30 or (as would inevitably be true in practice in this context) 60 days for appeals in civil cases, rather than within FRAP 4(b), which allows only 10 days for an appeal by a defendant in a criminal case; and *United States v. Bonnell*, 483 F.Supp. 1091 (D.Minn.1979), which held that for the purpose of determining whether certification of grand jury questions is permissible, a grand jury proceeding is a "civil action" within 28 U.S.C. § 1292(b). But the *Manges* court recognized the undesirability of the result it felt compelled to reach, *see* 745 F.2d at 1251, and, as the *Bonnell* opinion shows, 483 F.Supp. at 1092, the courts of appeals are divided on the question with respect to 28 U.S.C. § 1292(b) there decided.[3] We take no position on these issues, which we regard as highly debatable. The application of each statute or rule using the words "civil action" must be decided on the basis of its language, its history and its purpose. In our case, the decisive considerations against holding that a motion to quash a grand jury subpoena is a "civil action" are the Government's long-standing

---

**3.** Although the *Bonnell* opinion cites *Matter of Doe*, 546 F.2d 498, 501–02 (2 Cir.1976), as showing that we have "opined that a certification route is available with respect to grand jury

questions," 483 F.Supp. at 1092, we did not reach that question there since no certificate had been sought.

immunity from costs of any sort and the restriction of its liability, when the rigidity of the traditional rule was relaxed in 1966, to matters that were indubitably civil in nature. A motion to quash a grand jury subpoena does not fit that bill.

The Government's objection to Payden's bill of costs is sustained.