# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 7, 2010          Decided February 22, 2011

No. 08-5440

IN RE: ROGEL GRANT,
PETITIONER

On Motion for Leave to Proceed
In Forma Pauperis

Petition for Writ of Mandamus
(No. 1:08cv0150)

*Brian S. Scarbrough*, appointed by the court, argued the cause as *amicus curiae* in support of petitioner. With him on the briefs was *David W. DeBruin*.

*Alexander D. Shoaibi*, Assistant U.S. Attorney, argued the cause for respondent. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: GARLAND, *Circuit Judge*, and WILLIAMS and RANDOLPH, *Senior Circuit Judges*.

Opinion of the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: A jury in the Eastern District of Pennsylvania convicted Rogel Grant of two counts of distributing crack cocaine and one count of possession of crack cocaine with intent to distribute. The district court sentenced Grant to life imprisonment. He is currently incarcerated at the United States Penitentiary in Bruceton Mills, West Virginia.

After his conviction, Grant brought a civil complaint in the U.S. District Court for the District of Columbia against the Attorney General of the United States, the U.S. Attorney for the Eastern District of Pennsylvania and an Assistant U.S. Attorney in the Eastern District alleging a conspiracy to deprive him of his constitutional rights under the Fifth, Sixth and Fourteenth Amendments during the prosecution of his criminal case. On its own motion, the district court ordered Grant's civil action transferred to the U.S. District Court for the Eastern District of Pennsylvania.

Grant filed a notice of appeal of the transfer order with the district court *pro se.* The district court transmitted the notice to this court. Because transfer orders are not appealable, *see Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 546 (D.C. Cir. 1992), we ordered that Grant's notice of appeal be construed as a petition for writ of mandamus. The order also directed Grant to pay the $450 docketing fee or to file a motion for leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a). Grant filed the motion. Our court referred it to the merits panel, appointed counsel to serve as amicus curiae for him and instructed the parties to address the question whether the filing-fee requirements of the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915(b), apply to petitions for writs of mandamus.

Under 28 U.S.C. § 1915(a), "any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal

therein, without prepayment of fees or security therefor" by a person who demonstrates through an affidavit his inability to pay such fees or give security therefor. 28 U.S.C. § 1915(a)(1).[1]

---

[1] 28 U.S.C. § 1915 provides in relevant part:

(a)(1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

(2) A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.

(3) An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

(b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and,

Proceedings authorized under this and similar provisions are said to be in forma pauperis. The origins of the statute reach back at least as far as 1892, Law of July 20, 1892, ch. 209, 27 Stat. 252, and the origins of the practice further still, *see* 1

when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—

(A) the average monthly deposits to the prisoner's account; or

(B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

(3) In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action or an appeal of a civil action or criminal judgment.

(4) In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.

ROGER FOSTER, A TREATISE ON FEDERAL PRACTICE IN CIVIL CAUSES § 200 (1892).

In 1996, in the wake of a nearly six-fold increase in due process and cruel and unusual punishment prisoner complaints from 1975 to 1994, Congress amended § 1915 to impose additional obligations on prisoners seeking to proceed in forma pauperis. Subsection (b) now states that "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The subsection creates a payment schedule including prepayment of a portion of the fee, but provides that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." *Id.* § 1915(b)(2)–(4).

The courts of appeals are divided about whether (and how) the requirements of subsection (b) apply to petitions for writs of mandamus.[2] The closest this court has come to addressing the question in a published opinion was *In re Smith*, where we held that the filing fee requirements apply to "a petition for a writ of

---

[2] *Compare In re Stone*, 118 F.3d 1032, 1034 (5th Cir. 1997) (requirements apply to mandamus petitions only when the underlying action is civil), *Martin v. United States*, 96 F.3d 853, 854-55 (7th Cir. 1996) (same), *In re Tyler*, 110 F.3d 528, 529 (8th Cir. 1997) (requirements apply at least to petitions arising from "ongoing civil rights lawsuit[s]"), *and Green v. Nottingham*, 90 F.3d 415, 418 (10th Cir. 1996) (requirements apply to all mandamus petitions), *with In re Nagy*, 89 F.3d 115, 117 n.2 (2d Cir. 1996) (requirements only apply to petitions that are simply "alternative device[s]" for obtaining the relief sought in civil actions), *and Madden v. Myers*, 102 F.3d 74, 78 (3d Cir. 1996) (requirements do not apply to "*bona fide* mandamus petitions").

prohibition that . . . includes underlying claims that are civil in nature." 114 F.3d 1247, 1250 (D.C. Cir. 1997).[3]

Now that the question is directly before us, we hold that the filing-fee requirements of the PLRA apply to a petition for a writ of mandamus filed in connection with a civil proceeding in the district court. We agree with the Seventh Circuit that a mandamus petition in such a case "is realistically a form of interlocutory appeal." *Martin*, 96 F.3d at 854. Grant's petition began as a notice of appeal of the transfer order in his underlying civil action. It was only by order of this court that it was restyled a petition for a writ of mandamus. Our jurisdiction over an action in the district court is "exclusively appellate." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943). And our authority to issue writs of mandamus in connection with such actions is restricted to those that are "in aid of [our] appellate jurisdiction." *Cheney v. U.S. District Court*, 542 U.S. 367, 380 (2004) (*quoting Roche*, 319 U.S. at 26).

Even if we were to treat Grant's mandamus petition as initiating a separate proceeding, distinct from the underlying civil action, the filing-fee requirements would still apply because the new proceeding would itself be a "civil action." *Cf.*

---

[3] The writ of prohibition and the writ of mandamus were both common law prerogative writs. The writ of prohibition "was directed to a judge, and it ordered him to cease trial of a case or to cease certain actions in it." DAN B. DOBBS, REMEDIES § 2.11, at 112 (1973). The writ of mandamus was broader. "It orders a person, usually some official of the executive branch of the government, or the judge of a lower court, to carry out some affirmative action." *Ibid.* The courts of appeals are authorized to issue these writs and any other writs "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

*In re Grand Jury Subpoena Duces Tecum*, 775 F.2d 499, 503 (2d Cir. 1985).

Applying the filing-fee requirements to petitions for writs of mandamus in civil cases furthers the purpose of the Act to "reduce frivolous prisoner litigation by making all prisoners seeking to bring lawsuits and appeals feel the deterrent effect created by liability for filing fees." *In re Smith*, 114 F.3d at 1249 (quoting *Leonard v. Lacy*, 88 F.3d 181, 185 (2d Cir. 1996)); *see also In re Nagy*, 89 F.3d at 117. Like frivolous complaints in the district court, frivolous petitions in the courts of appeal "tie up the courts, waste valuable judicial and legal resources, and affect the quality of justice enjoyed by the law-abiding population." 114 Cong. Rec. 14571 (May 25, 1995) (statement of Sen. Dole).

In seeking appellate review of the district court's order transferring his civil action, Grant therefore "brings a civil action or files an appeal" within the meaning of § 1915(b). If he wishes to proceed, he must comply with the requirements of the PLRA.[4]

Amicus counsel for Grant relies on nine unpublished orders we issued between 2005 and 2008 dealing not with § 1915(b) but with an analogous provision in § 1915(g).[5] Some of the

---

[4] Because Grant's mandamus petition stems from a civil proceeding, we express no opinion on whether the filing-fee requirements of the PLRA apply to petitions for writs of mandamus when the underlying proceedings are criminal or concern an application for a writ of habeas corpus. *Compare, e.g.*, *In re Nagy*, 89 F.3d at 116, *with Green*, 90 F.3d at 416-18.

[5] Section 1915(g) states that a prisoner shall not "bring a civil action or appeal a judgment in a civil action or proceeding" in forma pauperis if he has had three or more previous actions or appeals

orders state that § 1915(g) does not apply to "a true mandamus petition." *Chandler v. Dep't of Justice*, No. 07-5244, 2007 U.S. App. LEXIS 24657, at *1 (D.C. Cir. Oct. 19, 2007); *In re Tyler*, No. 05-5034, 2005 U.S. App. LEXIS 8912, at *1 (D.C. Cir. May 17, 2005); *In re Ibrahim*, No. 04-5435, 2005 U.S. App. LEXIS 8908, at *1 (D.C. Cir. May 17, 2005). Others say that the prisoner's ineligibility to proceed in forma pauperis does not "extend" or "apply" "to petitioner's mandamus petition." *In re Perea*, No. 08-5399, 2008 U.S. App. LEXIS 24139, at *1 (D.C. Cir. Nov. 21, 2008); *In re Chandler*, No. 07-5405, 2008 U.S. App. LEXIS 9094, at *1-*2 (D.C. Cir. Apr. 17, 2008); *In re Veteto*, No. 06-5153, 2006 U.S. App. LEXIS 20284, at *1 (D.C. Cir. Aug. 4, 2006); *In re Judd*, No. 06-5045, 2006 U.S. App. LEXIS 16016, at *1 (D.C. Cir. June 22, 2006); *In re Demos*, No. 06-5096, 2006 U.S. App. LEXIS 16023, at *1 (D.C. Cir. June 22, 2006). All of the orders are in the form of summary dispositions, consisting only of three or four short paragraphs. All were issued without oral argument. In each order the only authority cited is *In re Smith*, 114 F.3d at 1150, which—as we have said—held that a "petition for a writ of prohibition" was within the PLRA's filing-fee requirements and recognized that other circuits had ruled the same for mandamus petitions "predicated on underlying civil claims." In other words, *Smith* seems consistent with our holding today but inconsistent with the conclusion for which the orders cite it.

Since 2007, the Federal Rules of Appellate Procedure have permitted litigants to cite unpublished opinions and orders issued on or after January 1, 2007. FED. R. APP. P. 32.1. Our local rule, adopted earlier, permits the parties to cite "as prece-

---

dismissed on grounds that it was "frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

dent" such dispositions entered on or after January 1, 2002. D.C. CIR. R. 32.1.[6] Another local rule states that "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." D.C. CIR. R. 36(e)(2). Neither our local rules nor the national rule specifies what effect future panels should give to unpublished orders and judgments.[7]

The law-of-the-circuit doctrine means that "the *same issue* presented in a *later case* in the *same court* should lead to the *same result*" and that "[o]ne three judge panel . . . does not have the authority to overrule another three-judge panel of the court." *LaShawn v. Barry*, 87 F.3d 1389, 1393, 1395 (D.C. Cir. 1996) (en banc). Our court has not determined how this doctrine applies to unpublished dispositions—unpublished because the panel concluded that order or memorandum would have no precedential effect. Most other circuits have decided, in local rules, that unpublished orders or opinions do not have binding precedential effect. *See* 1ST CIR. R. 32.1; 2D CIR. R. 32.1; 4TH CIR. R. 32.1; 7TH CIR. R. 32.1; 8TH CIR. R. 32.1; 9TH CIR. R. 36.3; 10TH CIR. R. 32.1; 11TH CIR. R. 36.2; FED. CIR. R. 32.1. *But see* 5TH CIR. R. 47.5; *Weaver v. Ingalls Shipbuilding, Inc.*, 282 F.3d 357, 359 & n.3 (5th Cir. 2002).

---

[6] Referring to these dispositions as "unpublished" has become a misnomer. As many as eighty-percent of these "unpublished" dispositions are now published in the *Federal Appendix* or available online. *See* Scott E. Gant, *Missing the Forest for a Tree: Unpublished Opinions and New Federal Rule of Appellate Procedure 32.1*, 47 B.C. L. REV. 705, 709 (2006).

[7] The advisory committee notes to Rule 32.1 explain that the rule "says nothing about what effect a court must give to one of its unpublished opinions or to the unpublished opinions of another court."

10

Although our circuit does not have a local rule directly on point, we agree that unpublished dispositions should not strictly bind panels of the court. In our view, the weight afforded an unpublished disposition of this court should be similar to that which the Supreme Court grants to its own dismissals "for want of a substantial federal question" or summary affirmances.[8] While these dispositions have some precedential value, they are "obviously . . . not of the same precedential value as would be an opinion of this Court treating the question on the merits." *Edelman v. Jordan*, 415 U.S. 651, 671 (1974). Like the Supreme Court's summary dispositions, unpublished opinions and judgments of this court are often entered without oral argument. *See* D.C. CIR. R. 34(j); SUP. CT. R. 18. And because the panel issuing such a disposition must unanimously agree that it does not "alter[], modif[y], or significantly clarif[y] a rule of law," D.C. CIR. R. 36(2), these decisions are frequently announced in a way that makes them not "suitable for governing future cases." *Hart v. Massanari*, 266 F.3d 1155, 1178 (9th Cir. 2001); *see Colo. Springs Amusements, Ltd. v. Rizzo*, 428 U.S. 913, 919 (1976) (Brennan, J., dissenting from denial of certiorari). For these reasons, unpublished orders like those the amicus cites may be considered persuasive authority, but they do not constrain a panel of the court from reaching a contrary conclusion in a published opinion after full consideration of the issue.

---

[8] Before the elimination of the Supreme Court's appellate jurisdiction over state court judgments, the Court summarily disposed of such cases by stating that the appeal was dismissed "for want of a substantial federal question." GRESSMAN ET AL., SUPREME COURT PRACTICE 365 (9th ed. 2007). This was the equivalent of a decision on the merits affirming the state court's judgment on the federal question. *Hicks v. Miranda*, 422 U.S. 332, 344 (1975). *But see* ALEXANDER M. BICKEL, THE LEAST DANGEROUS BRANCH 126 (2d ed. 1986) (calling "want of a substantial federal question" as a reason for dismissal "pure fiction").

We therefore hold that prisoners filing petitions for mandamus in civil cases must comply with the filing-fee requirements of the PLRA. When Grant submits the required materials, his liability for the PLRA fees under § 1915(b) will be calculated, and he must pay that amount as provided by further order of the court. If Grant does not file the requisite materials with the court within thirty days, his petition will be dismissed.

*So ordered.*