Catherine LORD, Plaintiff,

v.

Michael CHERTOFF, et al., Defendant.

No. 06 Civ. 4446(VM).

United States District Court,
S.D. New York.

Dec. 3, 2007.

Paul O'Dwyer, Law Office of Jeffrey S. Rubin, Huntington, NY, for Plaintiff.

F. James Loprest, Jr., U.S. Attorney's Office, S.D.N.Y., New York, NY, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Catherine Lord ("Lord") commenced this action against defendants Michael Chertoff, Secretary, United States Department of Homeland Security, Emilio T. Gonzalez, Director, United States Citizenship and Immigration Services (the "CIS"), and Mary Anne Gantner, District Director, New York District, CIS (collectively, "Defendants"), on June 13, 2006, seeking an order granting Lord's application for naturalization (the "Naturalization Application") as a citizen of the United States or, in the alternate, remanding the matter back to Defendants with instruction to approve the Naturalization Application. On May 29, 2007, the Court So Ordered a Consent Agreement between Lord and

Defendants (the "Consent Agreement") in which the CIS agreed to approve the Naturalization Application. On June 14, 2007, Lord was sworn in as a naturalized United States citizen. Lord now moves under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, for an award of attorney's fees and costs associated with this action. For the reasons set forth herein, Lord's motion is DENIED.

## I. BACKGROUND [1]

Lord, a citizen of France, has been living in the United States since in or about 1968 and has been a permanent resident in the United States since in or about 1977. On or about March 25, 2004, Lord filed the Naturalization Application on the basis that she had been a lawful permanent resident of the United States for more than five years and she was otherwise eligible for naturalization pursuant to 8 C.F.R. § 301.1 et seq. and 8 U.S.C. § 1401 et seq. Lord stated, in the Naturalization Application, that she was arrested on a misdemeanor charge in New York in October 1968 (the "1968 Arrest").

Lord was interviewed for naturalization by the CIS on or about April 7, 2005 (the "2005 Interview"). At that time, Lord discussed the 1968 Arrest, and stated that she had pled guilty to a minor trespass charge and was imprisoned for two or three days. She also provided Certificates of Disposition of the arrest (the "Certificates of Disposition") [2] prepared by the Clerk of the Justice Town Court, Washington, New York, the town where the misdemeanor charges were filed.

By decision dated June 27, 2005, the CIS denied the Naturalization Application (the "June 2005 Decision") on the basis that Lord failed to demonstrate the good moral character required to qualify for natural citizenship. The June 2005 Decision was based on Lord's failure to disclose the 1968 Arrest in an application for legal permanent residency (the "Application") in 1977.

On July 28, 2005, Lord filed an administrative appeal of the June 2005 Decision in the form of a Request for a Hearing ("336 Hearing") pursuant to 8 C.F.R. § 336(b) and 8 U.S.C. § 4047(a). The 336 Hearing occurred on December 6, 2005, and Lord was then advised that she would receive a final decision on the Naturalization Application in writing.

On February 23, 2006, Lord sent a letter (the "February 2006 Letter") to the CIS requesting that the Naturalization Application be granted, and enclosed two Justice Town Court docket sheets (the "Docket Sheets") created at the time of the 1968 Arrest.[3] By letter dated April 25, 2006

---

**1.** The following facts are taken from Lord's submissions, including the Amended Complaint dated November 3, 2006 (the "Am. Compl."), Notice of Mot. for Attorney's Fees and Costs dated June 28, 2007, and Pl.'s Reply to Defs.' Mot. for Counsel Fees Under EAJA dated September 28, 2007 ("Plaintiff's Reply").

**2.** The Certificates of Disposition state that Lord pled guilty to charges of second degree criminal trespass and fourth-degree criminal possession of a dangerous drug, in violation of N.Y. Penal Law §§ 140.10 and 220.05, respectively, for which she was sentenced to serve 30 days in jail and pay a $250.00 fine. (See Certificates of Disposition, attached as

Ex. A to Am. Compl.) Lord alleges the Certificates of Disposition are incorrect because she was not convicted of any drug offense and was not sentenced to 30 days in jail. (See Am. Compl. f 17.)

**3.** The first Docket Sheet states that Lord was arrested and charged with second degree criminal trespass and that, on October 20, 1968, she pled guilty to that charge and paid a $100.00 fine. The second Docket Sheet states that Lord was arrested and charged with fourth-degree possession of a dangerous drug, pled not guilty, was remanded on $1,500.00 bail and, on November 1, 1968, paid a $250.00 fine. (See Docket Sheets, attached as Exs. C and D to Am. Compl.)

(the "April 2006 Letter"), Lord advised the CIS that unless she received a final decision on the Naturalization Application within 10 days, she would commence litigation to compel a response. The CIS did not respond to the February or April 2006 Letters, therefore, on June 13, 2006, Lord filed the instant action.

By a decision issued on September 18, 2006, the CIS denied the Naturalization Application (the "September 2006 Decision") based partly on Lord's failure to disclose the 1968 Arrest. However, the CIS apparently reconsidered that ruling, and on April 2, 2007, Defendants sent a letter to the Court (the "April 2007 Letter") stating that the CIS had approved the Naturalization Application. By Order dated April 3, 2007, the Court entered a Conditional Order of Discontinuance of this action but such order was vacated at the request of Lord on April 9, 2007. On May 29, 2007, the Court So Ordered the Consent Agreement, under which Defendants agreed to approve the Naturalization Application and schedule a ceremony for Lord to be sworn in as a naturalized United States citizen within thirty days. On June 14, 2007, Lord was sworn in.

## II. *DISCUSSION*

## A. *LEGAL BACKGROUND*

The relevant portion of the EAJA states that:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party ... fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action ..., brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Thus, pursuant to the EAJA, Lord is entitled to recover attorney's fees and costs associated with this litigation if she is a "prevailing party," unless one of the two specified conditions is satisfied. In this case, Defendants do not argue that special circumstances exist that make an award of attorney's fees unjust. If Lord is a prevailing party, Defendants therefore must satisfy the substantial justification condition to preclude Lord from obtaining attorney's fees and costs.

### 1. *The EAJA and "Prevailing Party"*

█ To be considered a "prevailing party," a plaintiff must have achieved a judicially-sanctioned material alteration of the legal relationship between the parties. *See Roberson v. Giuliani,* 346 F.3d 75, 79 (2d Cir.2003) (interpreting *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.,* 532 U.S. 598, 603, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)). A party is not a prevailing party simply because a desired result of the lawsuit is achieved or a voluntary change in the defendant's conduct is brought about. *See Buckhannon,* 532 U.S. at 600, 121 S.Ct. 1835. Rather, a prevailing party must achieve a material alteration of the legal relationship of the parties, such as a judgment on the merits or a court-ordered consent decree. *See id.* at 604, 121 S.Ct. 1835. The Second Circuit has explained that prevailing party status is not limited to cases where there is a judgment on the merits or a court-ordered consent decree but "is conferred whenever there is a court ordered change in the legal relationship between the plaintiff and the defendant or a material alteration of the legal relationship of the parties." *Vacchio v. Ashcroft,* 404 F.3d 663, 674 (2d Cir.2005) (citations and internal quotation marks omitted).

█ In this case, Defendants argue that Lord is not a prevailing party because the

CIS approved the Naturalization Application voluntarily in March 2007 and informed the Court of its approval in the April 2007 Letter. (*See* Defs. Mem. of Law in Opp'n to Pl.'s Mot. For an Award of Fees Under the EAJA dated 7, 2007, 18.) Defendants contend that Lord's motion for attorney's fees and costs can not be distinguished from that rejected in *Perez–Arellano v. Smith,* 279 F.3d 791 (9th Cir.2002). The Court disagrees.

In *Perez–Arellano,* the plaintiff filed an action in Federal Court seeking de novo review of the denial of the plaintiff's naturalization application to the Immigration and Naturalization Service (the "INS"). The plaintiff re-submitted his application to the INS while the action was held in abeyance by the court upon agreement of counsel, and the INS approved the application. Upon joint motion of the parties, the lawsuit was dismissed. The court held that the plaintiff was not a "prevailing party" for purposes of an award of attorney's fees because his change of status was the result of the INS's voluntary decision and was not compelled by the district court. *Id.* at 792. The court explained that "although [the plaintiff] obtained his goal of naturalization, there was no enforceable judgment on the merits nor any enforceable settlement agreement." *Id.*

*Perez–Arellano* is readily distinguishable from the present case, however, for two reasons. First, in this case, there is a court-ordered enforceable agreement between Defendants and Lord. A court-ordered agreement conveys prevailing party status because it is a material alteration of the legal relationship of the parties. *See Buckhannon,* 532 U.S. at 604, 121 S.Ct. 1835. Second, in the Consent Agreement, the Court retained "jurisdiction over this action for the purpose of enforcement of [the Consent Agreement] ... and for the purposes of any other appropriate applications." (Consent Agreement ¶ 2). There-

fore, even though Defendants argue that they voluntarily approved the Naturalization Application prior to entering the Consent Agreement, the Court's "retention of jurisdiction ... is not significantly different from a consent decree and entails a level of judicial sanction sufficient to support an award of attorney's fees." *Roberson,* 346 F.3d at 82. Therefore, the Court's express retention of jurisdiction over the enforcement of the Consent Agreement creates "sufficient judicial imprimatur" to support an award of attorney's fees. *Id.* at 81, 83 (A court-ordered agreement is "court-ordered change[ ] in the legal relationship between the plaintiff and the defendant.") (citation and internal quotation marks omitted). Accordingly, the Court finds that Lord is a prevailing party in this action for the purposes of the EAJA.

### 2. *Substantially Justified*

██ "Substantially justified" is defined as "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Vacchio,* 404 F.3d at 674 (citations and internal quotation marks omitted). When seeking attorney's fees under the EAJA, a prevailing party must first allege that the Government's underlying actions were not substantially justified. *See* 28 U.S.C. § 2412(d)(1)(B); *see also Scarborough v. Principi,* 541 U.S. 401, 407–08, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004). Once the prevailing party so alleges, the burden then shifts to the Government to show that its position was substantially justified. *See id.* at 408; *Commodity Futures Trading Comm'n v. Dunn,* 169 F.3d 785, 786 (2d Cir.1999). The Second Circuit has held that "the Government must demonstrate that its position had a reasonable basis in both law and fact." *Vacchio,* 404 F.3d at 674 (citations and internal quotation marks omitted). If a defendant's position in any

segment of the litigation is not substantially justified, then the court may award fees for the time spent by plaintiff in successfully opposing the defendant's position in that segment. *See Smith by Smith v. Bowen,* 867 F.2d 731, 735 (2d Cir.1989).

In this case, Lord asserts that Defendants were not substantially justified in (1) failing to render a timely final decision of the Naturalization Application after the 336 Hearing, and (2) denying the Naturalization Application.[4]

a. *Failure to Render a Timely Final Decision*

Lord contends that although she would have eventually commenced litigation seeking a review of the September 2006 Decision denying the Naturalization Application, the filing of the initial complaint in June 2006 and various motions for default judgment would have been avoided if the CIS had rendered a final decision prior to the commencement of this litigation, or had it responded to the February or April 2006 Letters.

Defendants assert that the six-month lapse between the 336 Hearing and Lord's filing of this action does not approximate the kind of delay that courts have found unreasonable in naturalization matters. The Court agrees. Although, under 8 C.F.R. § 336.2(b), the CIS is required to provide a second naturalization interview or a re-hearing within 180 days of a request by a naturalization applicant, there is no prescribed time frame in which the CIS must render a decision after such

hearing.[5] The Court here does not deem it necessary to decide what would constitute an unreasonable delay; a delay of nine months from the time of the 336 Hearing until the September 2006 Decision, under the circumstances in this case, is not unreasonable. *See, e.g., Alkenani v. Barrows,* 356 F.Supp.2d 652, 657 n. 6 (N.D.Tex.2005) (refusing to compel the CIS to issue a determination after a nine month delay); *cf. Jefrey v. I.N.S.,* 710 F.Supp. at 489 (finding a sixteen month delay in processing plaintiff's application unreasonable); *Nadler v. I.N.S.,* 737 F.Supp. 658, 661 (D.D.C.1989) (finding a two year delay in processing plaintiff's application unreasonable). Accordingly, Defendants have met their burden of showing substantial justification with respect to Lord's claim that the September 2006 Decision was untimely.

b. *Denial of the Naturalization Application*

Lord contends that the September 2006 Decision did not have a reasonable position in law or fact in denying the Naturalization Application because it was based on incorrect facts and there was no evidence to support that Lord lacked good moral character at that time. The Court disagrees. Defendants had a reasonable basis in law and fact to conclude that Lord did not meet her burden of proving good moral character. *See Vacchio,* 404 F.3d at 674; *see also Kovacs v. United States,* 476 F.2d 843, 844–45 (2d Cir.1973) ("The burden of proving good moral character is on the

---

4. Lord also argues that Defendants were not substantially justified in failing to take a position early in the litigation. However, on October 23, 2 006, Defendants informed the Court that the CIS had rendered its final determination on September 18, 2006 and requested a pre-motion conference to discuss filing a motion for lack of subject matter jurisdiction and failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(1) and (6) in lieu of

an answer. *But see Jefrey v. I.N.S.,* 710 F.Supp. 486, 489 (S.D.N.Y.1989) ("[The Government's] lack of a 'litigation position' in this matter—its failure even to answer the complaint—cannot be considered 'reasonable.' ")

5. Pursuant to 8 CF.R. § 336.2(b), the CIS did provide a re-hearing within 180 days of Lord filing the appeal.

[plaintiff] . . . with any doubts to be resolved against him . . . And the false testimony relied upon to establish a lack of good moral character need not be material to the final merits of naturalization, i.e., the government need not show that truthful answers would have barred granting of the petition.")

First, Defendants had a reasonable basis in law to conclude that Lord did not satisfy her burden of establishing good moral character when she provided false testimony in the Application by failing to disclose the 1968 Arrest. *See Kovacs,* 476 F.2d 843 at 844–45. Even though Lord's failure to disclose the 1968 Arrest occurred over 30 years ago, Defendants assert that they may consider Lord's conduct at any time prior to the five year statutory residency period when evaluating claims of good moral character. The Court agrees. While it is true that an applicant must show good moral character for the five-year period set forth in 8 U.S.C. § 1427(a), the CIS has discretion to consider "the applicant's conduct and acts at any time prior to" the five year statutory period "in determining whether the applicant has sustained the burden of establishing good moral character." 8 U.S.C. § 1427(e); *see also* 8 C.F.R. § 316.10(a)(2) ("The [CIS] is not limited to reviewing the applicant's conduct during the five years . . . but may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to that period, . . . if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character.").

Second, Defendants had a reasonable basis in fact for concluding that Lord provided false testimony in the Application. Lord stated in the Application that she had never been arrested or detained although she had been arrested in 1968. Lord argues that her statements made in the Application were made to the United States

Consul in France so it was her understanding that the questions were limited to arrests in France and not the United States. The Court notes that even if Lord misunderstood the questions, it is still reasonable for the CIS to conclude that she testified falsely. *Berenyi v. Dist. Dir., INS,* 385 U.S. 630, 637, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967) ("[D]oubts should be resolved in favor of the United States and against the claimant.") (citation and internal quotation marks omitted). Moreover, the CIS asked Lord to explain the 1968 Arrest during the recent appeals hearing but Lord's response was to request that the CIS submit proof that she gave false testimony and, when the CIS showed Lord a copy of the Application, she offered no explanation at the hearing. (*See* September 2006 Decision, attached as Ex. E to Am. Compl.)

The Court notes that the Naturalization Application was ultimately granted; however, the September 2006 Decision, even if erroneous, "was not so devoid of legal or factual support that a fee award is appropriate." *Kirkland v. R.R. Ret.,* 706 F.2d 99, 105 (2d Cir.1983). Accordingly, the Court finds that Defendants have met their burden of showing that the September 2006 Decision denying the Naturalization Application was substantially justified.

### III. *ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that the motion for attorney's fees (Docket No. 24) of plaintiff Catherine Lord against defendants Michael Chertoff, Secretary, United States Department of Homeland Security, Emilio T. Gonzalez, Director, United States Citizenship and Immigration Services ("CIS"),

and Mary Anne Gantner, District Director, New York District, CIS, is **DENIED**.

**SO ORDERED.**